UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PETER K. PERILLO,              :
                               :
    Plaintiff,                 :
                               :
V.                             :   CASE NO. 3:05-CV-1054(RNC)
                               :
MICHAEL J. ASTRUE,[1]          :
COMMISSIONER OF                :
SOCIAL SECURITY,               :
                               :
    Defendant.                 :

RULING AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability benefits. Plaintiff has moved for an order reversing the decision of the Commissioner, and defendant has moved for an order affirming the decision. For the reasons that follow, the Commissioner's decision is reversed and the matter is remanded for reconsideration.

I. Background

Plaintiff applied for supplemental security income claiming that obsessive compulsive disorder, anxiety disorder, major depression, panic attacks, neck pain and back pain prevented him

---

[1] Effective February 12, 2007, President Bush appointed Michael J. Astrue to serve as Commissioner of Social Security, succeeding Jo-Anne B. Barnhart. Pursuant to Rule 25(d)(1), Fed. R. Civ. P., the Court substitutes Michael J. Astrue as the defendant in this action.

1

for working. (Tr. 16, 23.) He alleged disability beginning on June 19, 2002.  After his claim was denied, he requested a hearing, which took place before an administrative law judge on October 22, 2004.

At the hearing, plaintiff testified that he stopped working in 1996, when herniated discs in his neck prevented him from continuing to perform his work as an assembler, and that he had not returned to work in any capacity because his obsessive compulsive disorder had worsened. (Tr. 245-46, 250.) Bonnie Law, plaintiff's treating psychoanalyst and therapist, testified that she met with plaintiff weekly or every other week from June 2002 through the hearing date in October 2004. (Tr. 235.) She described plaintiff as memory-impaired, lacking the internal structure necessary to attend appointments, agoraphobic, and often so disoriented that he could not function or get home independently. (Tr. 237, 240.)  She further testified that plaintiff suffered from severe, chronic depression, as well as severe, recurring panic attacks, which caused him to lose his memory, concentration, and ability to function. (Tr. 240.)

The record before the ALJ included reports prepared by two state agency consultants: a nonexamining psychologist, who completed a questionnaire concerning the plaintiff's mental residual functional capacity; and an internist, who examined the plaintiff on one occasion.  Their reports indicated that

plaintiff's impairments moderately restricted his activities of daily living.

On February 25, 2005, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. Following the five-step process for evaluating disability claims established by the Social Security Administration, the ALJ made the following findings: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability; (2) plaintiff's neck and back pain, status postinferior and RV myocardial infarction, obsessive compulsive disorder, major depression, and anxiety disorder were "severe" impairments; (3) plaintiff's specific impairments did not meet or medically equal one of the listed impairments in the regulations; (4) plaintiff was unable to perform his past relevant work as an assembler; and (5) plaintiff could make an adjustment to work as an assembler, handpacker, or general laborer. (Tr. 23-24); see 20 C.F.R. § 416.920 (2007); see also Kamerling v. Massanari, 295 F.3d 206, 209 n.3 (2d Cir. 2002).

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 3, 2005, rendering the ALJ's decision final.

II. Discussion

The ALJ's decision is subject to judicial review to determine whether it is legally correct and supported by

substantial evidence. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A.

The ALJ discounted the opinions of plaintiff's treating psychoanalyst and therapist, Ms. Law, and declined to give them controlling weight, on the ground that, under Social Security Regulations, a certified psychoanalyst who is not a licensed physician does not qualify as an acceptable medical source. (Tr. 21) Plaintiff contends that this was error because the record establishes that Ms. Law treats the plaintiff under the supervision of a licensed psychiatrist, who concurs in Ms. Law's opinions. For the reasons that follow, I agree that the ALJ erred.

In evaluating medical evidence, an ALJ must assess every medical opinion he receives, regardless of its source. 20 C.F.R. § 416.927(d) (2007). Only "acceptable medical sources," defined as licensed physicians and psychologists, can provide evidence to establish an impairment, see 20 C.F.R. § 416.913(a)&(d)(1) (2007). As the ALJ noted, however, evidence from "other sources," such as unlicensed therapists, may be used to show the severity of an impairment and how it affects a claimant's ability

4

to work, see 20 C.F.R. § 416.913(a)&(d) (2007).

To properly evaluate the weight to be given medical opinions, an ALJ ordinarily has to consider a number of factors. 20 C.F.R. § 416.927(d) (2007). Though these factors explicitly apply only to opinions from "acceptable medical sources," they also can be applied to opinions of "other sources," such as therapists. See S.S.R. No. 06-03p. Indeed, the Commissioner has ruled that an "opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." S.S.R. No. 06-03p (C.E. 2006).

In this case, the ALJ offered no analysis of the factors that must be considered in deciding how much weight to give a medical opinion. Instead, he simply stated, incorrectly, that the opinions of a psychotherapist, not Ms. Law specifically, "are not entitled to greater weight" than the opinions of "acceptable medical sources." (Tr. 21.)

The ALJ's error in this regard cannot be considered harmless. Had the ALJ applied the proper legal standard, and analyzed the relevant factors as required, he might well have concluded that Ms. Law's opinions should be given greater weight than the opinions of the state agency consultants.[2] Ms. Law had

---

[2] The Commissioner generally gives more weight to the opinion of a source who examines the plaintiff than to the opinion of a source who has not examined the plaintiff. 20 C.F.R.

5

treated the plaintiff under the supervision of a licensed psychiatrist for more than two years. During this time, she had met with him weekly or every other week, witnessed his panic attacks and compulsive rituals, and prepared detailed descriptions of how his impairments impacted his ability to function. The state agency consultants, in contrast, had no treatment relationship with the plaintiff. The psychologist who filled out the questionnaire concerning the plaintiff's mental condition never examined him. And the internist who reported on the plaintiff's medical condition saw him only once.

Plaintiff contends that, had the ALJ given Ms. Law's opinions proper weight, substantial evidence would not support the conclusion that he was not disabled because he would meet the required levels of severity for anxiety-related disorders at step three of the regulations. See 20 C.F.R. § 404, Subpart P, Appx. 1 §§ 12.04, 12.06.³ Plaintiff could be right. Ms. Law testified

---

§ 416.927(d)(1) (2007); see also White v. Commissioner, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (ALJ erred in not giving appropriate weight to plaintiff's social worker as "other source" evidence under 20 C.F.R. § 416.913(a), particularly "given that he is sole source that had a regular treatment relationship with plaintiff."). As the Commissioner has recognized, moreover, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." S.S.R. No. 06-03p.

³ "12.06 Anxiety Related Disorders...The required level of severity for these disorders is met when the requirements in both A

6

that plaintiff experienced recurrent severe panic attacks accompanied by difficulty breathing, sweating, loss of concentration, and loss of the ability to function. (Tr. 237.) She stated that his compulsions required him to engage in repeated activities that were very time-consuming. (Tr. 238.) According to Ms. Law's testimony, plaintiff would not be able to function without the help of his friend. (Tr. 237, 240, 241.) Based on her knowledge of the nature and extent of his anxiety-related problems, she concluded that he had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties maintaining concentration.

Ms. Law's testimony also might support a determination that plaintiff's impairments were sufficiently severe as to constitute a §12.04 affective disorder.[4] Ms. Law testified to plaintiff's

---

and B are satisfied, or when the requirements in both A and C are satisfied. A. Medically documented findings of at least one of the following:...3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or 4. Recurrent obsessions or compulsions which are a source of marked distress...AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. OR C. Resulting in complete inability to function independently outside the area of one's home." 20 C.F.R. § 404, Subpart P, Appx. 1 § 12.06.

[4] "12.04 Affective Disorders...The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied. A. Medically

pervasive loss of interest in most activities. She stated that he had "no social life anymore," and "basically just stay[ed] at home." (Tr. 238.) She stated that plaintiff had "difficulty concentrating," and often "didn't remember he had an appointment or . . . where he was going." (Tr. 235.) She testified about plaintiff's feelings of worthlessness and his desire to die, stating that he had said "many times" that "he [did] not wish to be alive." She also stated that he "would not be able to find his way home or function" without the help of a friend; that "he had difficulty even being able to tolerate sitting in his car;" and that he was often disoriented with regard to time and place. (Tr. 237, 240).

On the remand, the ALJ must analyze and explain the weight Ms. Law's opinions should receive and evaluate the severity of plaintiff's impairments accordingly.

B.

The ALJ's finding at step four of the evaluation process that plaintiff was unable to perform his past work as an

---

documented persistence, either continuous or intermittent, of one of the following: 1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or...f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide...AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration..." 20 C.F.R. § 404, Subpart P, Appx. 1 §12.04.

8

assembler is in conflict with his finding at step five that plaintiff could perform the job of an assembler. (Tr. 23-24.) Defendant urges that the ALJ's finding at step four that plaintiff could not perform his past work was "merely a simple misstatement." However, the ALJ's written opinion twice states that plaintiff is unable to return to his past relevant work. (Tr. 22, 23) In addition, the ALJ undertook to determine whether other jobs existed that plaintiff could perform, which would have been unnecessary if the ALJ had decided that plaintiff could return to his past work.

    Vocational expert Kenneth Smith provided the only evidence regarding the jobs plaintiff could perform. (Tr. 263.) In responding to a hypothetical question from the ALJ, Mr. Smith opined that an individual of plaintiff's "age, education, and past relevant work experience who is faced with the inability to concentrate and maintain competitive pace in the average work place due to various psychological factors such as rituals" would <u>not</u> be able to perform his past relevant work and would <u>not</u> be able to find a job in the national economy. (Tr. 263.) In response to a second hypothetical, Mr. Smith testified that an individual of the plaintiff's age, education, and past relevant work experience who is limited to performing light work in a low-stress environment that is supervised and requires few decisions and only limited interaction with the public, and also requires limited bending, stooping, twisting, squatting, kneeling, crawling, climbing, and balancing, <u>could</u> perform the plaintiff's

9

past relevant work and could work as an assembler, handpacker, or general laborer. (Tr. 263-64.)

The ALJ relied on the characteristics in the first hypothetical in finding that plaintiff could not return to his previous job, but relied on characteristics in the second hypothetical in finding that plaintiff could perform a similar job. Mr. Smith offered no evidence that a person who is unable to perform the work of an assembler is nonetheless able to perform the work of a handpacker or laborer. On this record, it must be concluded that the Commissioner did not meet his burden at step five of the evaluation process. See 20 C.F.R. § 404.1520 (2007); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

IV. Conclusion

For the foregoing reasons, plaintiff's motion (Doc. #15) is granted, and defendant's motion (Doc. #19) is denied. Judgment under sentence four of § 405(g) will enter in favor of plaintiff. The Clerk may close the case.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2007.

/s/
Robert N. Chatigny
United States District Judge